IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:19cr9

FABIAN R. ELLINGTON, III


MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) WITH MEMORANDUM OF LAW (ECF No. 110), the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 113), DEFENDANT'S REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 114), the JOINT STATUS REPORT (ECF No. 122), the SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) WITH MEMORANDUM OF LAW (ECF No. 123), the UNITED STATES' RESPONSE TO COURT'S JUNE 1, 2021 ORDER (ECF No. 125), the RESPONSE TO GOVERNMENT'S REPORT REGARDING MEDICAL CONDITIONS AND TREATMENT OF DEFENDANT (ECF No. 129), the UNITED STATES' REPLY TO DEFENDANT'S RESPONSE TO COURT'S ORDER (ECF No. 130), and the UNITED STATES' STATEMENT OF POSITION IN RESPONSE TO COURT'S JULY 20, 2021 ORDER (ECF No. 134). Having considered the foregoing, the file, the Presentence Report, and the record in

the case, it is hereby ORDERED that the DEFENDANT'S  MOTION FOR
COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) WITH
MEMORANDUM OF LAW (ECF No. 110) will be denied.

## BACKGROUND

Fabian R. Ellington, III was charged originally under the
name of Christopher D. Nelson.[1]  The Presentence Report in this
case (ECF No. 102) shows that he has fourteen (14) aliases and
seven (7) social security account numbers, and that he claims
several different dates as his date of birth.

Ellington was charged (as Nelson) in an eleven (11) count
Superseding Indictment with conspiracy to commit bank fraud, in
violation of 18 U.S.C. § 1349 (Count One); nine (9) counts of bank
fraud, in violation of 18 U.S.C. §§ 1344 & 2 (Counts Two through
Ten); aggravated identity theft, in violation of 18 U.S.C. §§
1028A(a)(1) and (c)(3) (Counts Ten and Eleven).  On March 25, 2019,
Ellington pled guilty to Count Three (bank fraud) and Count Eleven
(aggravated identity theft).  The Statement of Facts accompanying
the guilty plea established that Ellington conceived and
orchestrated an extensive scheme to commit bank and identity fraud
which involved creating and depositing counterfeit checks to

---

[1] By ORDER entered on October 4, 2019 (ECF No. 75), the style of
the case was changed, at the defendant's request and upon agreement
of the United States, to name the defendant as Fabian R. Ellington,
III.

inflate bank account balances which were later fraudulently used to obtain money through debit and credit card transactions.   To implement this scheme, Ellington and his confederates recruited individuals who were down on their luck to open checking and savings accounts and then to turn over to Ellington and his co-conspirators the account numbers, debit cards, personal identification numbers, and starter checks that were associated with the new accounts.   Ellington and his co-conspirators then deposited fraudulent checks into the newly opened accounts to inflate the account balances.   Fraudulent checks were then issued to inflate the account balances and shortly thereafter Ellington or a co-conspirator would fraudulently use the account numbers and debit cards to withdraw the funds generated by the fraudulently inflated balances.   The debit cards were used to purchase items at commercial establishments.

Ellington was ascribed the role of manager or supervisor of this criminal activity which also involved five or more people and was otherwise extensive, and therefore his offense level was increased by three points.   The total offense level was computed to be 13.

Ellington also had an extensive criminal history, with a record of conviction for 37 different offenses, most of which were crimes involving issuance of bad checks, forgery, petit larceny,

grand larceny, forging public documents, and obtaining money by false pretenses. He has a number of traffic convictions thrown in to boot and he has two convictions for failure to appear. His criminal history spans almost twenty pages in the Presentence Report. Additionally, for the most part, Ellington has been afforded considerable lenience. When he has been in prison, his record of misbehavior is appalling.

With an offense level of 13 and a criminal history category of VI, the guideline provisions were 33-41 months for Count Three, and 24 months, to be served consecutively, for Count Eleven. The statutory penalties were 30 years for Count Three and two years consecutive for Count Eleven. Ellington was sentenced to a term of imprisonment of 35 months on Count Three to be followed by 24 months on Count Eleven, a total of 57 months.

When the motion for compassionate release was filed and throughout its course, Ellington has been confined at FCI Milan. However, on July 30, 2021, the Court was informed that he was transferred to another institution. (ECF No. 134-1, ¶ 6). The specific facility was not identified. Ellington's projected release date is February 18, 2024.

The record reflects that Ellington submitted a request for compassionate release to the Warden at FCI Milan on June 18, 2020. That request was denied on August 8, 2020. Ellington moved for

4

appointment of counsel (ECF No. 100) and that motion was granted (ECF No. 101) and the current motion (ECF No. 110) was filed by counsel.

The grounds on which Ellington seeks compassionate release are that he suffers from an "incurable condition that results in him being in a permanent immunocompromised state in addition to systemic hypertension." He also asserts that he suffers from a Vitamin D deficiency which raises his risk for exposure, and that, in March 2020, he tested positive for high Creatinine levels "which are consistent with chronic kidney disease" as well. At the end of briefing, he asserted that he recently had suffered a stroke. When reporting that event, counsel also asserted that "Ellington's health is deteriorating, his significant diagnoses are not being treated, and he continues to fail to have access to the [COVID-19] vaccine." Accordingly, the Court ordered further information about Ellington's medical conditions and treatment.

The record reflects that Ellington has four chronic medical conditions: (1) calcified granuloma on his left lung (a calcium spot from a previous infection) that is being followed by regular x-rays; (2) cytomegalovirus (a common viral infection) that is dormant but being monitored; (3) hypertension for which Ellington is being monitored and treated with prescription medication and which has never been dangerously elevated and is stabilized with

5

medication and exercise; and (4) obesity.   (ECF Nos. 134 and 134-1).   Ellington suffered a mild stroke in April 2021 for which he was hospitalized, properly treated for two weeks, and returned to the general prison population with a prescription medication to minimize the risk of recurrence.   The record reflects that, on June 16, 2021, Ellington was provided with the COVID-19 vaccine (ECF No. 129, p. 2).

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020).  In assessing whether the record shows the existence of extraordinary and compelling

6

reasons for compassionate release, courts consider, <u>inter alia</u>, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines.  <u>See</u> <u>United States v. Beck</u>, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019).  The policy statements are not binding but are informative and may be considered.  <u>United States v. McCoy</u>, 981 F.3d 271, 276 (4th Cir. 2020).  The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious.  Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." <u>United States v. Ayon-Nunez</u>, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility."  <u>United States v. Feiling</u>, 453 F. Supp.3d 832, 840 (E.D. Va. 2020); <u>United States v. White</u>, _____ F. Supp.3d _____, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020).

### 1.    Particularized Susceptibility

The defendant has established that he has calcified granuloma (a calcium spot in a lung), cytomegalovirus (a common virus), hypertension, obesity, and that he has suffered a mild stroke.

7

Ellington's papers alluded to an immune-deficient condition, but he does not specify it. The Government says that Ellington is HIV positive (ECF No. 130, p. 2). Under CDC guidelines, HIV positive status and obesity, but not the other conditions, place Ellington at risk of serious consequence if he contracts COVID-19.

However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that the conditions on which Ellington bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Ellington has not established that his medical needs cannot be met while incarcerated and, indeed, the medical records filed herein outline that he receives regular medical care, adjustment of his medications, and testing related to the chronic health issues.

However, in a recent filing, Ellington claimed that his health was deteriorating. (ECF No. 129, p. 2). Therefore, the Court directed an updated medical report. That report shows that Ellington's health is not deteriorating and that all of his

8

conditions are chronic and were being properly treated.   (ECF No. 134-1).[2]

In addition, Ellington has received the COVID-19 vaccine which, of course, is effective in reducing the risk of contracting COVID-19, and in minimizing the health consequences, if a breakthrough case is contracted.

In sum, on this record, Ellington has not met the particularized susceptibility risk facet of the applicable test.

### 2.   Particularized Facility Risk

Nor has Ellington met the particularized facility risk component of the appropriate test.  His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Milan, the defendant's facility of incarceration when the current motion was filed.  Further, the record reflects that, at the time of the filing of the Government's papers, FCI Milan had no active case of COVID-19 among inmates, no active cases of COVID-19 among staff, and 248 inmates and 83 staff members who had previously recovered from COVID-19.  In addition, all inmates who have tested positive are being appropriately treated and

---

[2] Ellington was transferred to an unnamed facility and the record contains nothing about treatment there.

9

isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons. It is correct that, early in 2020, FCI Milan experienced a large outbreak of COVID-19, during which three inmates died. But, the record shows that FCI Milan is now a safe facility. In any event, Ellington has been transferred to a facility closer to home, and he has not ever asserted a particularized risk at the new facility.

On this record, Ellington has not met the particularized facility component of the applicable test.

### 3.   Assessment Under 18 U.S.C. § 3553(a)

But, even if Ellington had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant argues, in conclusory fashion, that he is not a danger to the community. That, he says, is largely because his crimes did not involve violence. He is correct that the offenses of conviction did not involve violence.

However, as explained above, Ellington has an extremely serious and lengthy criminal history and one that shows that recidivism is a clear and present danger when Ellington is not

10

confined.  Moreover, danger comes in many forms in our society. It is a mistake to believe that danger is defined solely as violence.  It is reasonable to measure danger, in part, with reference to the effects on people when a defendant fails to adhere to the laws of society.  Ellington has violated those laws for years, taking advantage of those less fortunate in so doing.  In addition, his record while in prison is abysmal.  He has, while in prison, committed numerous violations of prison rules and has been disciplined therefor.

His entire history bespeaks a serious risk that he will commit future crimes if released.  Therefore, on this record, the Court cannot conclude that the release of Ellington does not present a risk of danger to the community.

Moreover, the sentence is sufficient, but not greater than necessary, to achieve all of the applicable sentencing objectives reflected in 18 U.S.C. § 3553(a).  Service of the full sentence imposed in this case is indeed necessary to promote respect for the law in Ellington, to deter Ellington and others, to effect just punishment for Ellington for the crimes that he has committed, and to protect society from his further crimes which, his history indicates, are almost certain to occur following his release.

The Court is aware that Ellington has conducted himself in some ways constructively while in prison.  However, considering

11

his prison record as a whole, he has not evinced rehabilitation. And, at this point, it is appropriate to note that programming and good service in a few ways in prison is not the equivalent to rehabilitation when the record contains numerous violations of prison rules.   The record does not show that Ellington is rehabilitated.   And given his history of recidivism, it would take much more than is in his current record for the Court to conclude that Ellington has been rehabilitated.

### CONCLUSION

For the foregoing reasons, the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) WITH MEMORANDUM OF LAW (ECF No. 110) will be denied.

It is so ORDERED.

/s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 3 , 2021